# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUANITA T.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 24-1085-JWL** |
| MICHELLE A. KING,[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

### I.     Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On January 21, 2025, Ms. King became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. King is substituted for Acting Commissioner Carolyn W. Colvin as the defendant.  Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits on November 11, 2020. (R. 17, 185-94). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ's evaluation of her allegations of migraine symptoms is erroneous and not supported by substantial evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

      The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R.

§ 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.    Discussion**

Plaintiff argues the ALJ discounted her alleged migraine symptoms because her migraines are infrequent, she reported caring for children, she was not compliant with her medications, and her migraines improved with treatment. (Pl. Br. 8-9). She argues the reasons are not supported by substantial evidence because: Although Plaintiff's neurologist stated her headaches were infrequent, "the ALJ failed to explain why experiencing 'infrequent' migraines would be inconsistent with [her] allegations of migraines occurring 'every couple of weeks' and totaling four days in a month." Id. at 9. "Without any information as to what {Plaintiff] did to care for the children, it is unclear

4

at best whether her caring for them was inconsistent with her testimony about migraines;" her ex-boyfriend and his children moved out two weeks later; and "there is no inherent inconsistency between caring for a child and suffering severe migraines four days per month." (Pl. Br. 10).  The ALJ only noted one instance of non-compliance with medication for two weeks in October 2020 and the ALJ did not apply the Frey test to that instance whereas most of the time Plaintiff was compliant with taking her medications. Id. 10-11.  Finally, she argues "the record does not show any improvement of migraine symptoms that conflict with [Plaintiff's] allegations of symptoms related to migraines," in that she reported that "despite her treatment, she suffered two-to-three migraines per month."  Id. 11-12 (citing Luna v. Colvin, No. 13-1289-JWL, 2014 WL 5598248, at *5 (D. Kan. Nov. 4, 2014)).

### A.   Standard for Evaluating a Claimant's Allegations of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential.  Such determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations[3] are peculiarly the province of the finder of

---

[3] Talley, Broadbent, Wilson, Hackett, Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in Soc. Sec. Ruling (SSR) 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529

fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper analysis of a claimant's allegations of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures the plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

---

(2017) is still the proper standard to be used as explained in the regulations in effect on September 11, 2023, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no longer a valid factor to be considered.

>the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

### B.   Analysis

Plaintiff recognizes the ALJ provided four reasons to discount Plaintiff's allegations of disabling migraines and tacitly acknowledges that those reasons are supported by the record evidence. She argues, however, that the reasons are not supported by substantial evidence because the evidence can be interpreted as being consistent with Plaintiff's allegations that she has migraines every couple of weeks causing her to miss work four days in a month.

As the Supreme Court recognized long ago and as the Tenth Circuit reiterated more recently, "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). Thus, the question for the court is whether the evidence supports the reasons given by the ALJ to discount Plaintiff's allegations of disabling symptoms, not whether the plaintiff's

allegation can be understood to be disabling despite the reasons given to discount them. This is particularly true since the court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential.

As Plaintiff recognizes and the ALJ cited, Dr. Welch characterized Plaintiff's migraines as "infrequent." (R. 25, citing Ex. 2F/8 [R. 372]}. Plaintiff correctly argues infrequent migraines might be understood to encompass one every two weeks. However, they might also be interpreted as one every three months. While neither Dr. Welch nor the ALJ stated a time frame for the infrequent headaches, it is clear the ALJ understood it to be less frequently than would preclude working and the evidence will support that understanding. Moreover, Plaintiff does not account for the probability that some of her migraines occur on non-working days.

The fact that Plaintiff cares for children also supports discounting Plaintiff's assertion her migraines are disabling. Plaintiff testified she does a lot of staying in bed and in the dark when she has migraines. (R. 54). But taking care of children requires activities such as supervising them, preparing meals and feeding them and other activities requiring effort out of bed and attention to them. It is reasonable for an ALJ to find Plaintiff's migraines are not as severe as she alleges if she cares for her child and her boyfriend's children. Plaintiff's child was an adolescent and may have been able to care for herself somewhat, but she says noting of the ages of her boyfriend's children.

Plaintiff argues the ALJ improperly relied on only one instance of missing her medications for two weeks to find noncompliance with medication but ignores that one recorded instance demonstrates a willingness not to comply and suggests she may have

failed to comply other times which were not recorded by her healthcare providers. Plaintiff also argues the ALJ erred in failing to apply the Frey test.

As the Commissioner argues, the Frey test is inapposite here.  The Tenth Circuit has noted that "Frey concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (emphasis added).  Here, the ALJ did not rely on noncompliance to deny benefits, but to consider the severity of Plaintiff's allegedly disabling migraines.  In 2018, the SSA further clarified application of the Frey test in cases such as this.  SSR 18-3p, 2018 WL 4945641 (SSA Oct. 2, 2018).

SSR 18-3p Explains that three conditions must be met before the agency's failure to follow prescribed treatment policy may be applied to a claim.  Those conditions are:

> Condition 1: The individual is otherwise entitled to disability or statutory blindness benefits under titles II or XVI of the Act
>
> Condition 2: There is evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based
>
> Condition 3: There is evidence that the individual did not follow the prescribed treatment

2018 WL 4945641 *2 (SSA Oct. 2, 2018).

IF all three conditions are met, THEN factor 1 and factor 4 of the Frey test will be applied.

> Assessment 1: We assess whether the prescribed treatment, if followed, would be expected to restore the individual's ability to engage in substantial gainful activity (SGA)
>
> Assessment 2: We assess whether the individual has good cause for not following the prescribed treatment

Id.  Here, condition 1 of SSR 18-3p is not met: the Frey test factors will not be applied.

Plaintiff argues the ALJ's reliance on improvement to discount her allegations of disabling migraines is erroneous because she continued to report disabling migraines two to three times a month.  Plaintiff's argument turns the burden of proof in a Social Security disability case on its head.  It is Plaintiff's burden to prove that she cannot perform any substantial gainful activity, it is not the Commissioner's burden to prove she can.  To overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481, n.1 (emphases in original).  Plaintiff has not made that demonstration here.

The Commissioner has provided four reasons to discount Plaintiff's allegations of disabling symptoms which Plaintiff agrees are supported by the record evidence but argues the court should weigh them differently than did the ALJ.  As noted above, the court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 31, 2025, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**